[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10606
Non-Argument Calendar
_____

D. C. Docket No. 4:14-cr-00014-CDL-MSH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


WYTRENIA REYNOLDS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(November 18, 2015)

Before  MARCUS, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Wytrenia Reynolds appeals her convictions for theft of government property in violation of 18 U.S.C. § 641, aggravated identity theft in violation of 18 U.S.C. § 1028A, and receipt of stolen treasury checks in violation of 18 U.S.C. § 510. Reynolds argues that the government presented no direct evidence of her guilt and that no additional evidence corroborates some of the testimony against her.

We normally review de novo whether the evidence was sufficient to sustain a criminal conviction. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). However, when a defendant fails to move for a judgment of acquittal or renew such a motion at the close of all evidence after presenting a defense case, we affirm unless a "manifest miscarriage of justice" would result. United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) (quotation omitted). Using this standard, we reverse a conviction only if evidence on a key element is so tenuous that the conviction is shocking. United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012). In analyzing sufficiency claims, we generally view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict. Id.

At the close of evidence, Reynolds moved for judgment of acquittal on two of her theft of government property charges and two of her receipt of stolen property charges, as well as on two aggravated identity theft charges that the government then voluntarily dismissed. She did not move at this time for acquittal

on two of her other theft of government property charges, her two aggravated identity theft charges, or one of her receipt of stolen property charges. While we review her sufficiency challenges on this first set of counts de novo, we may reverse on the second set only if evidence on a key element is so tenuous that the conviction is shocking. See id. at 1196. In the end, this distinction makes no difference because Reynolds has not demonstrated that the evidence for any of the elements of any of these charges was either insufficient for a jury to convict or so tenuous that her conviction is shocking.

## I.    Theft of Government Property

Counts 1 through 4 of Reynolds's indictment allege that Reynolds stole government property by receiving and negotiating four treasury checks payable to others. To support a conviction under 18 U.S.C. § 641 for theft of government money or property, the government must prove "(1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of others; (3) and that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the money or property." United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993) (en banc). Circumstantial evidence can prove the requisite intent. Id. at 982.

Count 1 of Reynolds's indictment alleges the theft or conversion of a $369,273 treasury check payable to Karole Keith. Keith testified at trial that she did not know Reynolds or give her permission to cash this check. Counts 2 and 4 allege the theft or conversion of checks payable to Chenwroh Kpan and Adam Harris. Although Kpan and Harris did not testify at trial, a bank employee told jurors that Kpan called him to report this check as stolen. In addition, Erica Montgomery testified extensively about how Reynolds presented her with all three of these checks and told her to deposit them. Montgomery testified that she gave Reynolds the cash from both the Kpan and Harris checks. She also testified that Reynolds called her at least five times demanding the cash from the Keith check. Montgomery had deposited this check, but the bank never released funds for it. Count 3 of the indictment alleges the theft of a treasury check payable to Philip and Catherine Seagraves. Philip Seagraves testified that he and his wife Catherine neither signed this check nor gave Reynolds permission to cash it. The jury also heard testimony from George Rowell, owner of Big O's Package Store, that Reynolds brought this already-signed check to his store to cash it. In light of this evidence, the jury had a sufficient basis to find beyond a reasonable doubt that Reynolds fraudulently appropriated all four of these checks.

Though circumstantial, the evidence was also sufficient to establish that Reynolds's conversion of each check was done knowingly. It is true that

Reynolds's own testimony contradicted other evidence in the case.  But the jury was entitled to reject her testimony and even to use it to decide her guilt.  See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt.").  For example, Reynolds claimed she knew nothing about Montgomery depositing a $369,6732 check payable to Karole Keith.  But the jury was entitled to discredit this statement or to treat it as evidence of guilt in light of testimony that Reynolds was standing with Montgomery as Montgomery deposited the check and as the bank teller made special arrangements through a supervisor to process such a large check.  Likewise, though Reynolds claimed she knew nothing about the Kpan and Harris checks, the jury saw photographs of Reynolds and Montgomery standing at a teller station processing these checks.  The jury also heard from testimony that Montgomery received over $10,000 for these checks in Reynolds's presence.  Based on this evidence, the jury had a sufficient basis to find that Reynolds knowingly stole or converted the four checks that formed the basis for her theft of government property charges.

## II.    Aggravated Identity Theft

Counts 5 and 7 of Reynolds's indictment allege that she used the names and signatures of Karole Keith and Philip and Catherine Seagraves without their authority.  The aggravated identity theft statute prohibits the knowing transfer,

possession, or use without lawful authority of "a means of identification of another person" during and in relation to a felony violation of 18 U.S.C. § 641, the theft of government property statute. 18 U.S.C. § 1028A(a)(1), (c)(1). "[T]he term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name, social security number, [or] date of birth." Id. § 1028(d)(7). We have held that "the use of someone's name and forged signature on a United States Treasury check sufficiently identifies a specific individual to qualify as a 'means of identification' under 18 U.S.C. § 1028A." United States v. Wilson, 788 F.3d 1298, 1310 (11th Cir. 2015).

Reynolds argues that the government presented no proof that she possessed a driver's license or other means of identification bearing another person's signature or personal identification. But the jury certainly heard evidence that she misappropriated names and signatures. Keith testified that she did not give Reynolds permission to use her signature and that the signature on the check was not hers. Similarly, Philip Seagraves testified that the signature on his check belonged to neither him nor his wife. Montgomery and Rowell testified that Reynolds gave them both these checks with the names and signatures already on them. Based on this testimony and the other evidence presented at trial, the jury

6

had a sufficient basis to find that Reynolds misappropriated names and signatures without authority in relation to the theft of government property.

## III.    Receipt of Stolen Treasury Checks

Counts 9, 10, and 11 charge Reynolds with receiving stolen treasury checks payable to Adam Harris, Karole Keith, and Chenwroh Kpan.  These charges were based on a statute that prohibits receiving, delivering, or retaining a United States Treasury check with both the intent to defraud and the knowledge that the check "is stolen or bears a falsely made or forged endorsement or signature."  18 U.S.C. § 510(b).  Reynolds argues that the jury did not hear enough evidence that she personally possessed the checks listed in these counts.  To the contrary, Montgomery testified that Reynolds personally gave her each of these checks and asked her to cash them.  Montgomery also testified that all three checks were signed when she received them.  Based on this testimony and the other evidence presented at trial, the jury had a sufficient basis to find that Reynolds had knowledge of the forged signatures on these checks and acted with the intent to defraud when she gave Montgomery the checks and asked her to cash them.

## IV.    CONCLUSION

This jury heard sufficient evidence to find Reynolds guilty beyond a reasonable doubt of all the charges for which she was convicted.  We affirm.

**AFFIRMED.**

7